**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Spooner, | No. CV-15-01699-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Jennifer Spooner seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    BACKGROUND**

Plaintiff was born in September 1976. She completed ninth grade and has a GED. She has worked as a waitress, bartender, and hostess. She suffers primarily from neck and lower back pain and migraine headaches. She was 29 years old on the alleged onset date of disability, December 15, 2005. She lives with her disabled father and two daughters, one of which was born on December 15, 2005, and the other on November 20,

2001.  In May 2012, she reported being able to drive, go out alone, shop for groceries weekly, feed pets, do laundry, wash dishes, watch television, walk one flight of stairs, go outside a few times daily, and walk for ten minutes before needing to rest.  In 2010 and 2013, Plaintiff reported exercising regularly.

On February 3, 2012, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning December 15, 2005.  On March 3, 2014, she appeared with her attorney and testified at a hearing before the ALJ.  A vocational expert also testified.  On April 7, 2014, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.  On August 27, 2015, Plaintiff sought review by this Court.

In her opening brief, Plaintiff identified three issues for this appeal:

1. Did the ALJ mischaracterize Plaintiff's treating physician's surgical recommendation because reconstructive surgery is by definition debilitating, and, if so, was it harmful error?
2. Did the ALJ properly consider Plaintiff's fibromyalgia as required under SSR 12-2p?
3. Was the ALJ's conclusion that Plaintiff could return to her past work as a hostess supported by substantial evidence?

In response, in the context of the second issue, Defendant stated that Plaintiff's opening brief had not challenged the ALJ's credibility determination and therefore Plaintiff waived it.  In her reply, Plaintiff stated that because the ALJ's credibility determination is wholly irrelevant to Plaintiff's objectively severe impairments, Plaintiff did not want to waste the Court's time arguing harmless error.  But she also stated that credibility determinations now are improper under SSR 16-3p, published on March 28, 2016.  The Court granted Defendant leave to file a surreply to address issues raised for the first time

- 2 -

in Plaintiff's reply and granted Plaintiff leave to respond to Defendant's surreply. The Court has reviewed and considered all of the parties' briefing.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Claims that are not actually argued in an appellant's opening brief are not considered on appeal. *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Only issues that are argued specifically and distinctly in a party's opening brief are reviewed. *Id.* Moreover, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Failure to do so will only be excused when necessary to avoid a manifest injustice. *Id.*

A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, when the evidence is susceptible to more than one rational interpretation, courts must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Overall, the standard of review is highly deferential." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015).

Social Security Rulings ("SSRs") do not carry the force of law, but they reflect the official interpretation of the Social Security Administration and are binding on ALJs. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). They are entitled to some

deference to the extent they are consistent with the Social Security Act and regulations. *Id.*

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

### III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2007, and that she has not engaged in substantial gainful activity since December 15, 2005, the alleged onset date.  At step two, the ALJ found that Plaintiff has the following severe impairments:  degenerative disc disease of the lumbar and cervical spine, polyarthralgia, hypertension, fibromyalgia, and migraine headaches.  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is precluded from climbing ladders, ropes and scaffolds; she can occasionally climb ramps and stairs, and crawl; she can frequently stoop, crouch, and kneel; she can perform occasional bilateral overhead reaching; and she should avoid concentrated exposure to excessive noise and excessive lighting.

The ALJ further found that Plaintiff is capable of performing past relevant work as a hostess.

## IV. ANALYSIS

### A. The ALJ Did Not Mischaracterize Plaintiff's Treating Physician's Surgical Recommendation.

Plaintiff contends the ALJ mischaracterized the recommendation of neurosurgeon Dr. Christopher Iannotti and erroneously concluded that Plaintiff's treatment was "conservative and routine" without addressing the debilitating nature of reconstructive surgery.

Plaintiff first consulted with Dr. Iannotti on January 10, 2013.  He noted that Plaintiff described a ten-year history of neck pain and treatment consisting of narcotic pain medication and cervical epidural spinal injections.  After examining Plaintiff and reviewing an MRI of her neck, Dr. Iannotti said that Plaintiff's options consisted of "continued conservative non-operative management versus surgical intervention

consisting of C4-5 anterior cervical discectomy fusion." He said that Plaintiff was "a very reasonable candidate for surgery," but he did not feel this was an "emergency." Further, Dr. Iannotti said, "I do not necessarily feel that she must undergo surgery at this time." However, Dr. Iannotti recommended that Plaintiff not wait more than three to six months to undergo surgery.

Plaintiff saw Dr. Iannotti again on January 23, 2013. Dr. Iannotti noted that Plaintiff continued to use nicotine in the form of electronic cigarettes and he recommended cessation of all nicotine products prior to surgery. He further noted that they would try to schedule surgery in two months to allow time for smoking cessation. There is no evidence in the record that Plaintiff ever received treatment from Dr. Iannotti or ever saw him again.

In March 2013, Plaintiff began seeing Family Nurse Practitioner Chad Dance at Advanced Pain Management where she received monthly refills of prescription pain medication. In March, April, and May 2013, Plaintiff told FNP Dance that surgery was recommended but she was "holding off." In April and May 2013, FNP Dance noted: "Will defer surgery as recommended by the neurosurgeon for now until conservative measures do not reduce the pain." On June 6, 2013, Dr. Brian Page performed a diagnostic cervical medial branch block to determine whether radiofrequency ablation of the thoracic medial branch nerves would resolve Plaintiff's pain. On June 14, 2013, Plaintiff reported to FNP Dance that she had not experienced any reduction in pain after the cervical medial branch block. FNP Dance noted: "Will consider a spinal surgeon referral for second opinion for cervical spinal surgery. Will defer surgery as recommended by the neurosurgeon for now until conservative measures do not reduce the pain." In July, August, and September 2013, FNP Dance noted that "she is currently in the work up for cervical fusion, she states she has blood work to do and then she will be ready for surgery." However, she said she was putting off the blood work because she was afraid of the surgery. In October 2013, FNP Dance noted that Plaintiff was going to

schedule lumbar transforaminal injections and follow up with her surgeon regarding neck surgery.

Plaintiff had not undergone the proposed fusion surgery before the ALJ hearing on March 3, 2014.  During the hearing, the ALJ asked Plaintiff why Dr. Iannotti stated on January 10, "I do not necessarily feel that she must undergo surgery at this time," but then on January 23 said surgery would be rescheduled.  Plaintiff's counsel clarified that Dr. Iannotti had said Plaintiff was a reasonable candidate for surgery, but it did not need to be done urgently.  The ALJ's hearing decision correctly stated that the initial plan was to continue "conservative, non-operative management," but two weeks later "the plan included neck surgery once the claimant ceased smoking."  The fact that Plaintiff postponed the surgery more than a year implies that it was not urgently needed.

Plaintiff incorrectly argues that the ALJ "does not address Dr. Iannotti's findings directly, in effect finding that Dr. Iannotti's statement deserved no weight."  In fact, the ALJ cited Dr. Iannoti's physical examination findings, which included normal sensation, muscle strength, and reflexes.  The findings also included normal walking and observing no acute distress.  Dr. Iannotti reported that Plaintiff denied having back pain, joint pain, joint swelling, muscle cramps, muscle weakness, stiffness, or arthritis.  The ALJ was not required to assign any weight to Dr. Iannotti's recommendation that Plaintiff have surgery eventually.  Dr. Iannotti never treated Plaintiff and did not provide a medical source statement or a medical opinion regarding Plaintiff's functionality.

Further, the ALJ's conclusion that Plaintiff's treatment for neck pain was conservative is unrelated to his interpretation of Dr. Iannotti's surgical recommendation.  The ALJ noted that despite an alleged onset date of December 15, 2005, there was no evidence of continuous and regular treatment for any condition until January 2007.  The ALJ further stated that "most of the treatment notes documented conservative treatment consisting of pain medications only" with multiple illustrative citations, which do not include Dr. Iannotti's office visit notes because he did not prescribe any treatment.  While

injections may be invasive, multiple medical sources in the record referred to them as conservative treatment.

Finally, it is irrelevant whether the proposed cervical fusion would have been debilitating. Plaintiff did not have it.[123]

---

[1] Plaintiff misstates the holding of *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). The Ninth Circuit found error not because epidural injections and physical therapy were referred to as "conservative" treatments, but because the ALJ's conclusion that Garrison's condition improved was not supported by the record.

[2] Plaintiff mentions in passing that Listings 1.03, 1.04, and 14.09 are satisfied because the evidence of record documents an inability to ambulate "efficiently." The requirement is "effective," not "efficient," and under the Listings limitations in climbing, balancing, stooping, crouching, and crawling do not constitute *ineffective* ambulation. She does not use a walker or two canes, and she is able to carry out routine ambulatory activities, such as shopping. In January 2012, Dr. David Towns observed that Plaintiff had normal gait and station and said she could participate in an exercise program.

[3] Plaintiff's opening brief wanders from the issue she identified as the ALJ's mischaracterization of Dr. Iannotti's recommendation for surgical intervention to a rambling discussion of medical opinions. Although not properly raised as an issue on appeal, the ALJ gave specific, legitimate, clear, and convincing reasons supported by substantial evidence in the record for giving Dr. Dale Ratcliff's one-page November 15, 2012 migraine headache assessment little weight. Dr. Ratcliff wrote that Plaintiff had not worked for two years due to chronic migraines. The ALJ gave the headache assessment little weight because it does not explain how headaches interfere with Plaintiff's ability to work; Dr. Ratcliff is a pain management specialist, not a headache specialist; Plaintiff was removed from pain management because she violated the narcotics agreement; and the assessment is inconsistent with other medical opinions, objective testing, and Plaintiff's reported activities of daily living. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); 20 C.F.R. § 404.1527(c). Further, the ALJ did not reject Dr. Ratcliff's Physical Residual Functional Capacity Assessment in which he assessed limitations consistent with the ability to perform a range of light-exertion work. The ALJ rejected only Dr. Ratcliff's limitations on stooping, kneeling, crouching, and crawling because those limitations were not supported by the objective record.

- 8 -

**B.     The ALJ Properly Considered Plaintiff's Fibromyalgia as Required Under SSR 12-2p.**

Plaintiff contends the ALJ "harmfully failed to follow the Defendant's agency policy [SSR 12-2p] and when Plaintiff's fibromyalgia is properly considered, disability is established."

Under SSR 12-2p, evidence of fibromyalgia must be provided by a licensed physician who reviewed the claimant's medical history and conducted a physical exam. SSR 12-2p describes two sets of criteria for diagnosing fibromyalgia. Plaintiff has not identified record evidence showing that a licensed physician found that she meets either set of criteria. Neither the ALJ nor Plaintiff cited to any record evidence showing that a licensed physician formally diagnosed fibromyalgia or reporting any medical findings supporting such a diagnosis. On January 23, 2013, Dr. Iannotti referred Plaintiff to a rheumatologist for evaluation of "possible rheumatoid arthritis and/or fibromyalgia," but the record does not include evidence of any such evaluation. Nevertheless, the ALJ found that one of Plaintiff's severe impairments is fibromyalgia.

Under either SSR 96-7 or SSR 16-3p, no symptom or combination of symptoms can be the basis for a finding of disability unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable impairment that could reasonably be expected to produce the symptoms. Here, no medical signs or laboratory findings in the record demonstrate that Plaintiff has fibromyalgia. Plaintiff argues that because her "pain results from severe impairments well-established in the medical evidence," the ALJ's rejection of her pain testimony is inconsistent with his own decision and the evidence of record. Plaintiff's other impairments may be well established in the medical evidence, but fibromyalgia is not. However, the ALJ's apparent error in finding a severe impairment of fibromyalgia favors Plaintiff and is therefore deemed harmless.

Under SSR 12-2p, if objective medical evidence does not substantiate a claimant's statements about the intensity, persistence, and functionally limiting effects of fibromyalgia symptoms, the ALJ will consider all of the evidence in the case record,

including the claimant's daily activities, medications or other treatments the claimant uses, or has used, to alleviate symptoms; the nature and the frequency of the claimant's attempts to obtain medical treatment for symptoms; and statements by other people about the claimant's symptoms.  As discussed above, the objective medical evidence does not substantiate Plaintiff's assertion that fibromyalgia symptoms interfere with her ability to work.

Plaintiff has not actually made statements about the intensity, persistence, and functionally limiting effects of her fibromyalgia symptoms.  She has not identified symptoms of fibromyalgia that interfere with her ability to work.  She generally testified that she has pain, difficulty concentrating, and short-term memory problems.  She also testified that since 2007 she has been taking opioid pain medications, which make her tired and adversely affect her memory and ability to concentrate.  When asked whether she could tell if fibromyalgia affected her concentration, Plaintiff responded that she believed it was mainly the migraines that affect her concentration.  She also testified that she has trouble sleeping at night, which causes her to be tired during the day.  She said that sometimes her hands hurt or swell, possibly from fibromyalgia or perhaps from rheumatoid arthritis, which she believed to be in remission.

The ALJ did not reject or discount any subjective symptom testimony or other evidence that Plaintiff's fibromyalgia precludes or limits her ability to work because there is no such testimony or evidence in the record.  Further, the ALJ did not err by failing to incorporate fibromyalgia into his residual functional capacity assessment because there is no evidence that Plaintiff's fibromyalgia limited her ability to work.

### C. The ALJ's Conclusion that Plaintiff Could Return to Her Past Work as a Hostess Is Supported by Substantial Evidence.

At step four, the claimant has the burden of showing she can no longer perform her past relevant work.  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).  The ALJ may conclude the claimant can perform past relevant work by finding she is able to

perform the actual functional demands and duties of a particular past relevant job *or* she is able to perform the functional demands and duties of the occupation as generally required by employers throughout the national economy. *Id.* at 845. Thus, at step four, the claimant has the burden to prove she cannot perform her prior relevant work either as actually performed or as generally performed in the national economy. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008).

"Past relevant work" is work that the claimant performed within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). The ALJ may assess a claimant's past relevant work as actually performed by considering a properly completed vocational expert's report and/or the claimant's own testimony. *Pinto*, 249 F.3d at 845. The *Dictionary of Occupational Titles* usually is the best source for how a job is generally performed. *Id.* In addition, a vocational expert may offer relevant evidence within his or her expertise or knowledge concerning the demands of a claimant's past relevant work, either as actually or generally performed. 20 C.F.R. § 404.1560(b)(2).

At the hearing, during which Plaintiff was accompanied by counsel, the ALJ questioned Plaintiff about her employment as a waitress, bartender, and a hostess. The ALJ said that based on her earnings, only the hostess work would be considered past relevant work. The ALJ questioned the vocational expert regarding the classification of the hostess position and posed hypothetical questions regarding the hostess position as past relevant work. Plaintiff's counsel did not raise any objection to considering Plaintiff's hostess work as past relevant work. Therefore, Plaintiff failed to preserve for appeal any objection to considering hostess work as past relevant work. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).

Moreover, substantial evidence supports the ALJ's findings that Plaintiff performed work as a hostess within the past 15 years, she performed it for a sufficient length of time to learn and provide average performance, and she performed it at the level

of substantial gainful activity.  Plaintiff reported that she worked as a hostess 1994–1998, 1997–2001, and 2005–2006.  Plaintiff's reported earnings for calendar year 1998 were $8,466.50, and the hearing was in March 2014.

Plaintiff also contends the ALJ erred in finding Plaintiff can perform hostess work because it requires frequent reaching and would require working in an environment with excessive noise.  The ALJ's residual functional capacity assessment limits Plaintiff to occasional bilateral overhead reaching and directs that she should avoid concentrated exposure to noise.  The ALJ included both of those limitations in the second hypothetical he posed to the vocational expert.  The vocational expert classified hostess work as DOT 310.137-010.  Hostess work as defined by DOT 310.137-010 includes exposure to a moderate noise level and requires reaching frequently.  DOT 310.137-010 does not explain whether or to what extent "reaching" includes *overhead* reaching.  The vocational expert opined that an individual with the limitations included in the second hypothetical, *i.e.*, occasional overhead reaching, would be able to perform hostess work and testified that her opinion was consistent with the DOT and her training, education, and experience in the field.  The ALJ did not err in adopting the vocational expert's opinion.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed.  The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 22nd day of July, 2016.

Neil V. Wake
Senior United States District Judge